```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
                                                       :
KEVIN GILL and SIERRA WHITLEY,                         :       15-CV-5513 (ARR) (LB)
                                                       :
               Plaintiffs,                             :       NOT FOR ELECTRONIC
                                                       :       OR PRINT PUBLICATION
     -against-                                         :
                                                       :       OPINION & ORDER
CITY OF NEW YORK; POLICE OFFICER LESLY                 :
LAFONTANT; SERGEANT FRANK PANDULLO;                    :
POLICE OFFICER GESLY JEAN; SERGEANT                    :
VERDERBER JOSEPH; POLICE OFFICER ROBERTO               :
ANTON; POLICE OFFICER MOHAMMAD MIRZA;                  :
POLICE OFFICER JOSHUA JACKSON; DETECTIVE               :
GEORGE KRANT; LIEUTENANT JOSE VEGA;                    :
DANIEL PERRINO; SERGEANT OSCAR NUNEZ;                  :
POLICE OFFICER CRYSTAL HORNE; LIEUTENANT               :
JOHN HOPKINS; POLICE OFFICER LAURANCE                  :
LAVERTY; SERGEANT STEPHEN RINALDI; and POM             :
RAMOS,                                                 :
                                                       :
               Defendants.                             :
---------------------------------------------------------------------- X
```

ROSS, United States District Judge:

  Plaintiffs, pro se, bring a civil rights action against defendant police officers and the City of New York (the "City"), alleging various federal claims and related state law claims. Before the court is defendants' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and plaintiffs' motion for summary judgment. As explained below, defendants' motion is converted to a motion for summary judgment. With respect to plaintiffs' first illegal search claim, plaintiffs have failed to controvert evidence that they had no legitimate property or privacy interest in the apartment searched. Their "failure to investigate" claims are dismissed because such claims are not recognized by courts in this circuit. While plaintiff Gill brings a potentially meritorious illegal search claim, after months of discovery with this court's assistance, he has

been unable to identify the officer involved. Finally, his false arrest claim is dismissed because the undisputed facts show probable cause to arrest him. Furthermore, plaintiffs have failed to present or allege evidence sufficient to find liability against the City. Plaintiffs' federal claims are therefore dismissed. Finally, the court declines to exercise supplemental jurisdiction with respect to plaintiffs' state law claims.

## BACKGROUND

**A. Factual Background**

Plaintiffs allege civil rights violations relating to five different events occurring between June and August 2014.

1. <u>June 21 Break-In</u>

On June 21, 2014, defendant officers Jackson and Kant, in connection with the arrest of nonparty Barry Langston for petty larceny, allegedly searched plaintiffs' backyard and "forcibly opened and ripped apart" plaintiffs' front door – all without a warrant. Am. Compl. ¶ 10, ECF No. 30. Attached to the complaint are notarized letters from two witnesses declaring that they witnessed police officers break into plaintiffs' apartment at 1519 East New York Avenue. Letter (Jul. 7, 2015), ECF No. 30, at *18; Letter (June 8, 2015), ECF No. 30 at *20. Defendants admit that police "conduct[ed] a search for stolen property in the vicinity of" plaintiffs' address on June 21, but deny that police destroyed plaintiffs' door or entered their apartment. Answer Am. Compl. ("Answer"), ECF No. 69, ¶ 10. However, defendants have provided no evidence showing that police did not destroy the door or enter the apartment.

Instead, defendants direct the court's attention to evidence of the ownership status of the searched property as of the day of the alleged search. The record contains a deed and supporting documents, all publicly filed with the New York City Department of Finance of the City

Register, showing the sale of plaintiffs' apartment from Shonda Smith to East New York Ave Management Corp. on June 30, 2011. Deed, Decl. John L. Garcia Supp. Defs.' Mot. J. Pleadings Pursuant Rule 12(c) ("Garcia Decl.") Ex. B ("Deed"), ECF No. 78-2. Attached to the deed is a notarized statement from Smith declaring that she was a joint tenant with Linda Gill[1] on the above property until Ms. Gill died on January 19, 2009, at which point Smith became the sole owner of the property. Id. at *9. In addition, an "Affidavit of Adverse Possession" is attached to the complaint. Aff. Adverse Possession ("Gill Aff."), ECF No. 30, at *14-15. In this document, plaintiff Gill swears that he has "continuously and adversely possessed" the apartment since November 1, 2006. Id. at *14. He also claims to be the owner of the property "by survivorship and inheritance." Id.

2. July 4 and July 5 Complaints

According to the amended complaint, on July 4, Gill attempted to formally complain about the break-in. Am. Compl. ¶ 14. While officers were dispatched to his home, they refused to take a statement because plaintiff was a "squatter" with no "right[s] to honor." Id. The following day, Gill complained about this response. Id. ¶ 15. Additional officers came to plaintiffs' home, but "no report" was made. Id. ¶ 16. Defendants admit that officers "responded to" plaintiffs' apartment and that an Internal Affairs Bureau report was made. See Answer ¶¶ 14-16.

3. August 13 Search

On August 13, 2014, plaintiff Gill was stopped by unidentified officers who demanded that he show identification. Am. Compl. ¶ 21. After Gill identified himself, the officers told him

---

[1] Linda Gill appears to be plaintiff Gill's mother, but no evidence of that fact is before the court.

3

he could not leave until they had determined if he had any outstanding warrants. Id. ¶ 25. At some point, two unknown officers "proceeded to search plaintiff by lifting up his shirt." Id. ¶ 26. Several minutes later, defendant Nunez and other unidentified officers arrived and Gill was told that he could leave. Id. ¶¶ 28-29. Defendants have submitted no evidence disputing the allegations in the amended complaint relating to the search. See Answer ¶¶ 21-29 ("deny[ing] knowledge or information sufficient to form a belief as to the truth of the allegations" relating to the search).

4. August 14 Complaint

The following day, plaintiff Gill witnessed nonparty Elaine Williams steal a bag belonging to Gill. Am. Compl. ¶ 33. A few hours later, Gill identified Williams to two unidentified officers, who arrested Williams. Id. ¶ 35. Defendant Nunez arrived on the scene and allegedly told Gill he could not make a criminal complaint because he had "no rights." Id. ¶ 36. Defendants have submitted no evidence disputing the allegations in the amended complaint relating to the events of August 14. See Answer ¶¶ 33-36.

5. August 15 Arrest

The following day, defendants Hopkins and Laverty allegedly approached plaintiff Gill while he was selling water on a street corner and asked him for identification. Am. Compl. ¶¶ 37-39. The officers informed Gill that he was "obstructing traffic" and "selling water without a license," to which Gill responded, "[I] have the right to sell my property just like soccer moms sell water and cookies." Id. ¶ 39. When Gill did not produce identification, he was arrested and transported to the precinct. Id. ¶¶ 40-41. At the precinct, plaintiff was told the location where "he could get a vendor[']s permit." Id. ¶ 43. Defendants aver that Gill was arrested pursuant to an administrative code violation and/or an open bench warrant, Answer ¶ 40, and provided a

4

copy of a bench warrant against Gill dated May 23, 2013.  Bench Warrant, Garcia Decl. Ex. C, ECF No. 78-3.

   **B. Procedural History**

Plaintiffs filed their initial complaint in this action on September 21, 2015.  Compl., ECF No. 1.  They also filed complaints in two other cases before this court, 15-CV-5746 and 15-CV-6623.  The Honorable Lois Bloom, United States Magistrate Judge, held four conferences in these cases in as many months to assist plaintiffs in identifying all involved officers, including issuing several Valentin orders to the City's attorneys.  See Order (Jan. 5, 2016), ECF No. 15; Order (Feb. 23, 2016), ECF No. 20; Order (Mar. 24, 2016), ECF No. 25; Order (Apr. 21, 2016), ECF No. 28.[2]

On June 4, 2016, plaintiffs filed the operative complaint, consolidating their allegations from all three cases.  Am. Compl.; see also Order (June 9, 2016), ECF No. 31.  The amended complaint named eighteen individual officers as defendants, and no "John Doe" defendants were listed in the caption of the amended complaint.  Am. Compl. at *1.  The amended complaint alleges myriad civil rights violations arising under 42 U.S.C. § 1983 ("Section 1983"),[3] Monell liability against the City,[4] a "conspiracy" claim arising under 42 U.S.C. § 1985, and related state law claims.  Id. ¶¶ 51-81.

---

[2] Unless otherwise indicated, all citations to "ECF No." refer to the docket in this action.

[3] Specifically, plaintiffs list the following causes of action: "false arrest, unlawful entry, excessive use of force, malicious abuse of process, failure to intervene, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, racial profiling, abuse of authority, unlawful taking of private property, pattern of harassment, conspiracy, discrimination, [s]elective enforcement, fabrication[] of evidence[], denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution[]."  Id. ¶ 52.

[4] In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court established the standard for municipal liability for federal civil rights claims.  Id. at 694-95.

The City filed its motion for judgment on the pleadings on January 6, 2017. Mot. J. Pleadings, ECF No. 76. With their motion, defendants sent plaintiffs a notice pursuant to Local Rule 12.1, informing them that their motion may be converted to a motion for summary judgment and that plaintiffs must oppose the motion by submitting sworn affidavits or other documents. Notice Pursuant Local Civil Rule 12.1 Pro Se Litigant Who Opposes Rule 12 Mot. Supp. Matters Outside Pleadings ("12.1 Notice"), ECF No. 79.

Plaintiff Gill responded on February 10, 2017. Pls.' Mot. Oppose Defs.' Unverified Mot. Summ. J. ("Pls.' Resp."), ECF No. 82. Plaintiff Whitley filed a nearly identical response on February 24, 2017. Pls.' Mot. Oppose Defs.' Unverified Mot. Summ. J., ECF No. 85. Plaintiffs also filed their own motion for summary judgment, attaching an affidavit from Whitley re-alleging many of the facts from the amended complaint. Not. Mot. Summ. J., ECF No. 84. Plaintiffs submitted no other proof of their claims in opposition to defendants' motion.

## DISCUSSION

### A. Materials Outside the Pleadings Will be Considered

Defendants brought a motion for judgment on the pleadings under Rule 12(c), Mot. J. Pleadings, ECF No. 76; however, "Rule 12(c) permits the court, in its discretion and upon notice to all parties, to consider materials outside the pleadings. If it does, however, the motion is to be treated as one for summary judgment and disposed of as provided by Rule 56." Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 53–54 (2d Cir. 1985) (citations omitted); see also Annan v. City of N.Y. Police Dep't, No. 12 CV 2702 CBA, 2014 WL 10416919, at *23 (E.D.N.Y. Sept. 9, 2014), adopted as modified, 2015 WL 5552271 (E.D.N.Y. Sept. 18, 2015).

A motion for judgment on the pleadings may only be converted into a motion for summary judgment on notice to the parties. In particular, "[a] pro se party 'is entitled to notice

of the consequences of failing to respond to a motion to dismiss or for judgment on the pleadings which is being treated as a motion for summary judgment.'" Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (quoting Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983)). Here, such notice was provided, using the exact language provided in this court's local rules. See 12.1 Notice; Local Civil Rule 12.1. Plaintiffs were warned that they "may NOT oppose Defendants' motion simply by relying upon the allegations in [their] complaint" but rather "must submit evidence, such as witness statements or documents." Id.

Plaintiffs apparently understood this instruction. They submitted an affidavit swearing to many of the facts in the complaint. Affirmation, ECF No. 84, at 3-5. In addition, plaintiffs subsequently moved for summary judgment themselves. Not. Mot. Summ. J., ECF No. 84. The court will therefore consider materials outside the pleadings, including the documents and affidavits attached to plaintiffs' complaint, the Whitley affidavit submitted by plaintiffs with their own motion for summary judgment, and the documents attached to the Garcia declaration, and treat this motion as one for summary judgment. See Redman v. N.Y. State Dep't of Corr. Servs., 541 F. App'x 52, 53 (2d Cir. 2013) (affirming conversion of motion to dismiss to motion for summary judgment against pro se plaintiff where notice to plaintiff repeated language of Local Civil Rule 12.1).

### B. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether a genuine issue exists that must be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

7

(1968)). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Anderson, 477 U.S. at 250).

In assessing whether summary judgment is appropriate, I consider "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)). The moving party carries the burden of proving that no genuine dispute exists respecting any material fact, and it "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party has met this burden, to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). A genuine issue is presented if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 263 (E.D.N.Y. 2015) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing, e.g., Anderson, 477 U.S. at 255; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

### C. Plaintiffs' Section 1983 Claims

Section 1983 does not confer substantive rights, but is "a method for vindicating federal rights elsewhere conferred." Patterson v. Cty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the deprivation of a right, privilege, or immunity secured by the Constitution or laws, (2) by a person acting under color of state law. See 42 U.S.C. § 1983.

#### 1. Plaintiffs Have Not Shown a Deprivation of Their Rights by Police Actions on June 21

Plaintiffs allege that, on June 21, 2014, the police entered their apartment without a warrant by breaking down the front door. See Am. Compl. ¶¶ 9-12. Defendants dispute that police entered plaintiffs' residence. Answer ¶ 10. This dispute of fact is not material. As explained below, even assuming the police did enter and damage plaintiffs' home, plaintiffs did not have a cognizable privacy or property interest at the time of the search, and therefore cannot state a claim under Section 1983. Therefore, summary judgment is appropriate. See AEI Life, LLC v. Lincoln Benefit Life Co., --- F. Supp. 3d ---, No. 14-CV-6449, 2016 WL 7408835, at *4 (E.D.N.Y. Dec. 22, 2016) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" (alteration in original) (quoting Anderson, 477 U.S. at 248)).

Liberally construed, the amended complaint alleges that the police deprived plaintiffs of property without due process by breaking their door and illegally entering the home. As explained below, uncontroverted evidence shows that plaintiffs are not entitled to make either claim.

### a. Plaintiffs Lack a Property Interest in Any Damaged Property

First, "[t]o state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." Harrington v. Cty. of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010); W. Farms Assocs. v. State Traffic Comm'n, 951 F.2d 469, 472 (2d Cir. 1991)). However, "[t]o have a property interest [protected by the Due Process Clause], a person clearly must have . . . a legitimate claim of entitlement to it." Id. (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). Legitimate claims to property "are not created by the Constitution but, '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Id. (quoting Castle Rock, 545 U.S. at 756). Therefore, plaintiffs' ability to bring a claim under Section 1983 for police action damaging their apartment turns on whether they had a legitimate property claim as of the date the damage occurred.

Uncontested evidence in the record shows that plaintiffs had no possessory interest in the property as of June 21, 2014. First, a deed and supporting documents, all publicly filed with the New York City Department of Finance of the City Register, show the sale of the apartment by one Shonda Smith on June 30, 2011. Deed. Attached to the deed is a notarized statement from Smith declaring that she was a joint tenant with Linda Gill on the above property until Ms. Gill died on January 19, 2009, at which point Smith became the sole owner of the property. Id. at *9. Second, attached to the amended complaint is an "Affidavit of Adverse Possession" dated May 25, 2016, in which plaintiff Gill swears that he "ha[s] continuously and adversely possessed" the premises at 1519 East New York Avenue "since November 1st, 2006" and that "[a]t no time ha[s] [he] . . . ever made any agreement, verbal or contractual, with any documented . . . owner" of the

10

property. Gill Aff. at *14-15.

Under these facts, New York law does not give plaintiffs a possessory interest in any property destroyed. First, as the surviving co-tenant of a joint tenancy, Smith became the sole owner of the property by operation of law at Ms. Gill's death. See Melnick v. Press, 809 F. Supp. 2d 43, 57 (E.D.N.Y. 2011) ("Under New York law, '[a] joint tenancy is an estate held by two or more persons jointly, . . . creating in each joint tenant a right of survivorship." (alteration in original) (quoting Goetz v. Slobey, 908 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010))). Therefore, plaintiff Gill could not have inherited the property. Second, plaintiffs have submitted an affidavit apparently prepared to support plaintiff Gill's claim of ownership by adverse possession. See Gill Aff. at *15 ("I respectfully request you publish this document in order to notify any parties that claim to have any ownership or interest in said property."). In New York, "[t]o establish a claim of adverse possession, the occupation of the property must be (1) hostile and under a claim of right (i.e., a reasonable basis for the belief that the subject property belongs to a particular party), (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period (at least 10 years)." Estate of Becker v. Murtagh, 968 N.E.2d 433, 437 (N.Y. 2012) (citations omitted). Gill attests that his adverse possession began on November 1, 2006. Gill Aff. at *14. He thus could not claim ownership by adverse possession until November 1, 2016, four months after the search. In sum, "New York law . . . does not confer any property interest on squatters." Walls v. Giuliani, 916 F. Supp. 214, 218 (E.D.N.Y. 1996).

### b. Plaintiffs Lack Standing to Object to Police Entry of the Apartment

Second, with respect to the illegal entry claim, "the firmly established rule [is] that 'police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.'" Loria v. Gorman, 306 F.3d 1271, 1283 (2d Cir. 2002)

11

(quoting Kirk v. Louisiana, 536 U.S. 635, 638 (2002)). However, "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." See Minnesota v. Carter, 525 U.S. 83, 88 (1998) (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "A defendant can demonstrate that his own legitimate expectation of privacy has been infringed by showing that he owns the premises or property subjected to search [or entry], or by showing that he occupies and has dominion and control over the premises or property by leave of the owner." United States v. Sanchez, 635 F.2d 47, 63-64 (2d Cir. 1980) (first citing Rakas, 439 U.S. at 143 n.12, then citing Jones v. United States, 362 U.S. 257, 267 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83, 100 (1980)). As explained above, plaintiffs did not own the premises. Furthermore, Gill swore by affidavit that he has "adversely possessed" the property without agreement from the owner of the property. Gill Aff. at *14-15. He therefore lacks standing to pursue an illegal entry claim.

Indeed, squatters' claims under Section 1983 are routinely rejected by courts in this circuit. See, e.g, Smith v. Cty. of Nassau, No. 10-CV-4874 MKB, 2015 WL 1507767, at *8 (E.D.N.Y. Mar. 31, 2015) ("To the extent that Plaintiff was a squatter, he had no legal right to remain on the Property, and therefore cannot assert a cognizable property interest in the continued occupancy of the Property.") aff'd, 643 F. App'x 28 (2d Cir. 2016); Lagasse v. City of Waterbury, No. 3:09cv391 VLB, 2011 WL 2709749, at *9-10 (D. Conn. July 12, 2011) (trespasser had no reasonable expectation of privacy and therefore could not object to warrantless entry); Washington v. St. Albans Police Dep't, 30 F. Supp. 2d 455, 457-58 (D. Vt. 1998) (granting summary judgment against trespasser); De Villar v. City of New York, 628 F. Supp. 80, 83 (S.D.N.Y. 1986) (same); see also Sanchez, 635 F.2d at 63-64 ("[A] mere trespasser

has no Fourth Amendment protection in premises he occupies wrongfully."). Because "[b]are possession is not constitutionally protected," De Villar, 628 F. Supp. at 83, plaintiffs have not shown any deprivation of a right, privilege or immunity secured by the Constitution or laws, as required by Section 1983, see 42 U.S.C. § 1983. See also Sasmor v. Powell, No. 11-CV-4645 KAM JO, 2015 WL 5458009, at *5 (E.D.N.Y. July 20, 2015), adopted, 2015 WL 5458020 (E.D.N.Y. Sept. 17, 2015).

For these reasons, any causes of action arising from the events of June 21 are dismissed.

2. **Plaintiffs Have Alleged No Federal Violation Occurring on July 4, July 5, or August 14**

Plaintiffs' complaint, liberally construed, alleges that New York police officers, on three separate dates, did not sufficiently investigate crimes against them. First, on July 4 and July 5, officers allegedly refused to take a statement or create a report relating to the alleged illegal entry on June 21. See Am. Compl. ¶¶ 14-15. Second, on August 14, the police failed to investigate the theft of Gill's bag. Id. ¶¶ 33, 35-36. Because plaintiffs allege a harm not redressable under Section 1983, any factual disputes related to these events are not material. See Graham, 89 F.3d at 79. Therefore, these claims are dismissed on summary judgment.

First, with respect to the alleged failure to investigate on July 4 and July 5, plaintiffs' claims are covered by their false arrest claim and therefore cannot give rise to a separate cause of action. Blake v. Race, 487 F. Supp. 2d 187, 212 n.18 (E.D.N.Y. 2007).

Second, with respect to all three alleged failures to investigate, "the Second Circuit has yet to recognize a claim . . . [for] failure to investigate," and "district courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation . . . giving rise to a damages action," even when the plaintiff has been falsely accused of a crime. Grega v. Pettengill, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) (collecting cases). Here, plaintiffs bring a

13

failure to investigate claim as victims of alleged crimes. The Second Circuit has rejected such a claim, holding that victims "do not have a protected property interest in an investigation" into a crime affecting them. Harrington, 607 F.3d at 35. Therefore, plaintiffs' complaint is dismissed with respect to the alleged events of July 4, July 5 and August 14.

### 3. Gill Cannot Identify the Officer(s) Who Allegedly Searched Him on August 13

Plaintiff Gill alleges that, on August 13, 2014, during an interaction with several unidentified police officers, two unidentified officers "search[ed] plaintiff by lifting up his shirt." Am. Compl. ¶ 26. Several minutes later, defendant Nunez and other unidentified officers arrived and Gill was told that he could leave. Id. ¶¶ 28-29. Defendants have submitted no evidence disputing the plaintiff's allegations relating to this search. See Answer ¶¶ 21-29.

However, plaintiff has been unable to identify the officers who searched Gill, despite exhaustive efforts to assist them by the Honorable Lois Bloom, United States Magistrate Judge. Judge Bloom first issued Valentin orders to the city on November 23 and November 25, 2015. See Gill v. City of New York, No. 15-cv-6623, Order (Nov. 23, 2015), ECF No. 4; Gill v. City of New York, No. 15-cv-5746, Order (Nov. 25, 2015), ECF No. 4. These orders were discussed at a conference on January 5, 2016. See Order (Jan. 5, 2016), ECF No. 15. By February 23, 2016, the City "informed the Court that they had not identified . . . the officers who stopped and searched Gill on 8/13/2014." Order (Feb. 23, 2016), ECF No. 20. "The Court extended the deadline for the [City] to make their best efforts to identify these officers." Id. By March 24, 2016, Gill had named defendant Nunez with respect to the August 13 search, but no additional officers had been identified. Order (Mar. 24, 2016), ECF No. 25. Two months later, plaintiffs filed the amended complaint. Am. Compl.

"It is well settled in this Circuit that personal involvement of defendants in alleged

14

constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). Of course, in Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), the Second Circuit made clear that a pro se litigant is entitled to assistance from the district court in identifying a defendant. Id. at 76. However, when a pro se plaintiff cannot identify an officer after "substantial time" to do so, a court may grant summary judgment dismissing his claims. See Piper v. City of Elmira, 12 F. Supp. 3d 577, 591-92 (W.D.N.Y. 2014) (collecting cases); see also Valentin, 121 F.3d at 76 ("This opinion is not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted.").

Judge Bloom's efforts have provided plaintiffs the assistance to which they are entitled under Valentin. This case commenced eighteen months ago. In that time, Gill has not been able to provide information sufficient to identify the officers who searched him, see Am. Compl. ¶ 26, "[n]or do[] plaintiff[s] assert that additional discovery or trial will reveal these defendants' identities," Cosby v. City of White Plains ex. rel. City of White Plains, No. 04 Civ. 5829(CLB)(GAY), 2007 WL 853203, at *4 (S.D.N.Y. Feb. 9, 2007); see also Valentin, 121 F.3d at 75 ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities . . . ." (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980))). It is the view of this court that additional assistance in identifying the officer would be futile. Finally, plaintiffs cannot "receive a verdict and judgment against the named officers based on what John Doe[s] allegedly did." Rasmussen v. City of New York, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011). Therefore,

plaintiffs' claims arising from the August 13 search are dismissed without prejudice to renew them if he is able to identify the officers who searched him.

### 4. Defendants Had Probable Cause to Arrest Gill on August 15

Plaintiff Gill was arrested on August 15. Am. Compl. ¶ 40; Answer ¶ 40. "The elements of false arrest require the plaintiff to establish that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Bernshtein v. City of New York, 496 F. App'x 140, 141 (2d Cir. 2012) (alterations in original) (quoting Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996)). "[P]robable cause is a complete defense to a claim of false arrest." Smith v. Tobon, 529 F. App'x 36, 38 (2d Cir. 2013) (citing Williams v. Town of Greenburgh, 535 F.3d 71, 78-79 (2d Cir. 2008)).

Here, defendants present uncontroverted evidence of an outstanding bench warrant against Gill. Bench Warrant, Garcia Decl. Ex. C, ECF No. 78-3. "Probable cause to arrest exists when an officer learns of an open arrest warrant." Omor v. City of New York, No. 13-CV-2439 (RA), 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015) (citing Martinez v. City of New York, 340 F. App'x 700, 701 (2d Cir. 2009); United States v. Miller, 265 F. App'x 5, 7 (2d Cir. 2008)). "There is no dispute that there was an open warrant for Plaintiff at the time of his arrest and that there was thus probable cause to arrest him on that basis." Id.

Furthermore, the undisputed facts show that officers had probable cause to arrest plaintiff for a violation of the City's Administrative Code (the "Code"). The Code provides that it is illegal "for any individual to act as a food vendor without having first obtained a license therefor from the commissioner." N.Y.C. Admin. Code § 17-307(a) (2016). Bottled water is included in the definition of "food" in the Code, and selling water on a street corner constitutes acting as a

16

"food vendor." See id. § 17-306(b)-(c). A food vendor is required to exhibit his license upon request by any police officer, id. § 17-311(a), and failure to do so is "presumptive evidence that such food vendor is not duly licensed," id. § 17-325.1(a). Vending without a license is a misdemeanor punishable by a fine of up to one thousand dollars, imprisonment for up to three months, or both. Id. § 17-325(a).

Plaintiff admits that he was selling bottled water on a street corner at the time he was approached by the police. Am. Compl. ¶¶ 37-39. He admits that he refused to display a license when requested. Id. ¶¶ 39-40. "Courts in this circuit have found that a violation of vendor restrictions may constitute probable cause for an arrest." Wang v. City of New York, Nos. 05 Civ. 4679(AKH), 05 Civ. 5943(AKH), 2008 WL 2600663, at *2 (S.D.N.Y. June 26, 2008) (citing Pitiger v. City of New York, No. 02 Civ. 6616(JSR), 2003 WL 22251207, at *2 (S.D.N.Y. Sept. 30, 2003)). Therefore, the undisputed facts show that the defendant officers had probable cause to arrest plaintiff for unauthorized food vending.

### D. Plaintiffs' Remaining Claims

#### 1. Monell Liability

In Monell, the Supreme Court established that municipal liability under Section 1983 only applies when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipal] body's officers." 436 U.S. at 690; see also Coon v. Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005). Thus, the plaintiff must establish (1) "the existence of [some] municipal policy or custom" and (2) "a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted).

In their complaint, plaintiffs generally allege that the City should be held liable under Section 1983 for its failure to adequately train, discipline, or supervise police officers. Am. Compl. ¶¶ 55-57. However, plaintiffs fail to present—or even allege—any evidence of a specific deficiency in the City's training program, nor do plaintiffs present or allege any evidence about the city's failure to discipline or supervise the specific officers involved in this incident. Similarly, plaintiffs generally allege the existence of a municipal policy or practice, id. ¶ 62, but fail to adduce or allege any evidence of such policy or practice. Therefore, the court must dismiss plaintiffs' Section 1983 claims against the City.

### 2. Conspiracy

"To state a . . . conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" Pelt v. City of New York, No. 11-CV-5633 KAM CLP, 2013 WL 4647500, at *17 (E.D.N.Y. Aug. 28, 2013) (quoting Barnes v. Abdullah, No. 11-CV-8168, 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013)). Plaintiffs generally allege that the defendant officers conspired to deprive plaintiffs of their constitutional rights, Am. Compl. ¶ 66, but have failed to present or allege evidence of any specific instance of misconduct. See Krug v. McNally, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (quoting Ciambriello v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002))). Accordingly, plaintiffs' conspiracy claim must be dismissed.

### 3. State Law Claims

"[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's 'early stages.'" Pelt, 2013 WL 4647500, at *19 (alteration in original) (quoting Parker Waichman LLP v. Gilman Law LLP, No. 12-CV-4784(JS)(AKT), 2013 WL 3863928, at *5 (E.D.N.Y. July 24, 2013)). Having dismissed all of plaintiffs' federal claims with prejudice, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and therefore dismisses those claims without prejudice.

## CONCLUSION

Therefore, summary judgment is granted for defendants. All claims are dismissed with prejudice except plaintiff Gill's claim for an illegal search on August 13, and both plaintiffs' state law claims. These claims are dismissed without prejudice. Plaintiffs' motion for summary judgment is denied. The Clerk of Court is respectfully requested to enter judgment in favor of defendants and close the case.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Therefore, in forma pauperis status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                                                         /s/
                                                                   Allyne R. Ross
                                                                    United States District Judge

Dated:        March 23, 2017
                Brooklyn, New York